UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

**ALBA QUIÑONEZ FLORES,**

      **Plaintiff,**

   **v.**

**UNITED STATES OF AMERICA;**
**DOES 1-10**

      **Defendants.**

-------------------------------------------------------x

**PLAINTIFF'S NOTICE OF MOTION**
**TO STRIKE DEFENDANT'S**
**AFFIRMATIVE DEFENSES**

**Civil Action No. 14-CV-3166 (JBW) (RML)**

   PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law, Plaintiff

Alba Quiñonez-Flores will move this Court, before the Honorable Jack B. Weinstein at 225

Cadman Plaza East, Brooklyn, New York 11201, on January 20, 2015 at 10:00 a.m, or as soon

thereafter as may reasonably be heard, for an order granting her Motion to Strike Defendant's

Affirmative Defenses pursuant to Fed.R.Civ.P. 12(f).  Specifically, Plaintiff moves to strike the

Third, Fourth, Ninth, Tenth, Seventeenth, Nineteenth, Twentieth, Twenty-first, Twenty-second,

and Twenty-third defenses asserted in Defendant's Answer.  *See* ECF No. 16, Defendant's

Answer, pp. 14-18.

Dated: December 12, 2014

       Respectfully submitted,

       /s/ Ira J. Kurzban
       Ira J. Kurzban (*pro hac vice*)
       Kurzban, Kurzban, Weinger
       Tetzeli & Pratt, P.A.
       2650 S.W. 27th Ave.
       Second Floor
       Miami, Florida 33133

Phone: (305) 444-0060
Fax:    (305) 444-3503
Email:  ira@kkwtlaw.com


/s/ Jennie Santos-Bourne
Jennie Santos-Bourne (*pro hac vice*)
Americans for Immigrant Justice
3000 Biscayne Blvd.
Suite 400
Miami, Florida 33137
Phone: (305) 573-1106
Fax:    (305) 576-6273
Email:  jsantos@aijustice.org

*Counsel for Plaintiff*


TO:

Margaret M. Kolbe
Assistant U.S. Attorney
United States Attorney's Office
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
Margaret.Kolbe2@usdoj.gov

*Counsel for Defendant United States of America*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

**ALBA QUIÑONEZ FLORES,**

                       **Plaintiff,**

      **v.**

**UNITED STATES OF AMERICA;**
**DOES 1-10**

                    **Defendants.**

-------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO
STRIKE DEFENDANT'S AFFIRMATIVE
DEFENSES**

**Civil Action No. 14-CV-3166 (JBW) (RML)**

Plaintiff Alba Quiñonez Flores ("Ms. Quiñonez" or "Plaintiff") hereby files this Memorandum of Law in Support of her Motion to Strike Defendant's Affirmative Defenses. Ms. Quiñonez has filed this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, and against currently unidentified Customs and Border Patrol ("CBP") agents in their individual capacities for violations of her rights under the Fifth Amendment to the United States Constitution in accordance with *Bivens v. Six Unknown Defendants of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). The basis of Ms. Quiñonez's claims is the mistreatment she suffered while in CBP custody during her immigration detention in Texas. In answering Ms. Quiñonez's Complaint, the United States asserted twenty-four (24) defenses. *See* ECF No. 16, Defendant's Answer, pp. 14-18. Ms. Quiñonez moves to strike Defendant's Third, Fourth, Ninth, Tenth, Seventeenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, and Twenty-third defenses because they are redundant, legally insufficient, or immaterial to Ms. Quiñonez's claims.

## BACKGROUND

Ms. Quiñonez was apprehended by CBP agents on February 19, 2013 in the desert near Falfurrias, Texas.  *See* Exhibit A, Form I-213, Record of Deportable/Inadmissible Alien, p. 1; ECF No. 12, Second Amended Compl., p. 6.   Upon taking her into custody, CBP agents informed Ms. Quiñonez that they were taking her to the *hieleras*, which is Spanish for "freezers" and describes the temporary holding rooms in which CBP detains aliens near the U.S.-Mexico border in Texas.  *See* ECF No. 12, pp. 1, 6.  CBP agents transferred Ms. Quiñonez to the CBP Falfurrias Station located at 933 County Road 300, Falfurrias, Texas.  *See* Exhibit A, p. 2; ECF No. 12, p. 15.  Ms. Quiñonez suffers from diabetes, hypertension, cardiac problems, depression, anxiety, and migraines.  *See* ECF No. 12, p. 7.  When she was apprehended by CBP, Ms. Quiñonez was carrying various medications to treat these ailments, including Co-Aprovel and Enapril for her hypertension; Fluoxetine, Trazodone, and Clonazepam for depression and anxiety; Tramadol for migraines; and Glibenclamide, insulin, and syringes for diabetes.  *Id.*

Upon her arrival at the Falfurrias Station, a CBP agent confiscated all of Ms. Quiñonez's medications and discarded them all except the Enapril, which was nonetheless made inaccessible to her.  *See* ECF No. 12, p. 7.  CBP never provided Ms. Quiñonez with any replacement medications.  *Id.*  She also informed a CBP officer that she was dizzy and was experiencing pain from a sprained ankle, but her complaints were ignored and she received no medical attention. *Id.* at 7-8.  After being processed, Ms. Quiñonez was put in a small, overcrowded cell that was so cold that her fingers turned blue and her lips split.  *Id.*  There was absolutely no privacy in the cell and male CBP officers and detainees could easily see Ms. Quiñonez use the only toilet in the cell, for which there was never an adequate supply of toilet paper.  *Id.* at 8-9.  All of the women detained together were forced to share a single container of drinking water that smelled foul and

tasted like bleach.  *Id.* at 9.  Ms. Quiñonez also began menstruating while in CBP custody, which was a serious problem because CBP agents would only provide 4-5 sanitary napkins for roughly twenty women each day.  *Id.*  Ms. Quiñonez was able to obtain a single napkin, but it was insufficient and her clothing became soaked in blood after she desperately tried to improvise by using toilet paper.  *Id.* at 9-10.  CBP never provided a change of clothes or basic hygiene products.  *Id.* at 10.  Additionally, due to her sprained ankle, dehydration, and a severe migraine (for which she no longer had medication to treat), Ms. Quiñonez had difficulty getting to the food distribution line.  *Id.*  CBP agents would not let another detainee retrieve food for Ms. Quiñonez, so she was often forced to miss meals.  *Id.* at 10-11.

As a result of dehydration and malnourishment which exacerbated her pre-existing and untreated medical conditions, Ms. Quiñonez lost consciousness and collapsed in the cell.  *See* ECF No. 12, p. 11.  Other detainees had previously warned CBP agents about her deteriorating health, but the agents never took any action to investigate her health or provide her with medical treatment.  *Id.*  After her collapse, CBP agents finally took Ms. Quiñonez to Edinburg Regional Medical Center.  *See id.*; Exhibit A, p. 4. After her brief hospitalization, Ms. Quiñonez was returned to the Falfurrias Station the same day and remained in CBP custody.  *See* ECF No. 12 at 12-13.  At no point during her time in detention did Ms. Quiñonez ever receive any of her prescribed medications or appropriate medical attention.

In addition to neglecting Ms. Quiñonez's serious medical needs, CBP agents also failed to provide for her basic human needs while in detention and failed to properly maintain the detention facility in a clean and hygienic manner.  Bright overhead lights in the cell were kept on 24 hours a day and Ms. Quiñonez was never given any form of bedding.  *See* ECF No. 12, p. 9. Consequently, she was forced to sleep on a cold, hard floor with the lights on every night.  *Id.*

Ms. Quiñonez and the other detainees were also never provided with basic hygiene products, such as soap, toothbrushes, or toothpaste, nor were they ever permitted to bathe, despite being detained for multiple days. *Id.* at 10. Moreover, the cell was never properly cleaned and did not contain a trash can, so that used toilet paper and sanitary napkins piled up next to the toilet, which caused a putrid stench to permeate throughout the entire cell. *Id.* The food provided to Ms. Quiñonez was always partially frozen and consisted of a processed meat sandwich on white bread. *Id.*

As a result of the mistreatment that Ms. Quiñonez suffered during her detention, she filed this action against the United States ("Defendant") and currently unidentified CBP agents pursuant to the FTCA and *Bivens*, respectively. Defendant filed its Answer to the Complaint on November 25, 2014. *See* ECF No. 16, Defendant's Answer. In its Answer, Defendant asserts a total of twenty-four (24) affirmative defenses. *See id.* at 14-18.

## ARGUMENT

Defendant's Third, Fourth, Ninth, Tenth, Seventeenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, and Twenty-third defenses should be struck because they are either redundant, legally insufficient, or immaterial to the claims at issue. Under Fed.R.Civ.P. 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant's Third and Fourth defenses are redundant because they are included in Defendant's Eighteenth and Seventeenth defenses, respectively, and should thus be struck. Defendant's Fourth, Ninth, Tenth, Seventeenth, and Nineteenth defenses are legally insufficient and should be struck because for each defense "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."

*Equal Emp't Opportunity Comm'n v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004) (citing *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).   The increased time and expense required for a plaintiff to disprove insufficient defenses "may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike."   *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 389 (E.D.N.Y. 1997).   Finally, the Court should strike Defendant's Twentieth, Twenty-first, Twenty-second, and Twenty-third defenses because they are immaterial and have no relation to Ms. Quiñonez's claims.

## I.   Defendant's Third and Fourth Defenses Should Be Struck Because They Are Redundant.

The Court should strike Defendant's Third defense as redundant because it is included in Defendant's Eighteenth defense.  The Third defense states:

> The complaint fails to state a tort claim under the law of the place where the alleged negligent or wrongful acts or omissions occurred.

ECF No. 16, p. 14-15.

And the Eighteenth defense asserts:

> The complaint should be dismissed to the extent it fails to state a claim upon which relief can be granted.

*Id.* at 17.  The Third defense for failure to state a tort claim is simply a more narrowly focused version of the more general Eighteenth defense for failure to state a claim, and is thus already necessarily included in the Eighteenth defense.  Accordingly, the Third defense should be struck because it is redundant.  *See Simon v. Mfrs Hanover Trust Co.*, 849 F. Supp. 880, 884 (S.D.N.Y. 1994) (striking a defense because it was simply "a more narrowly focused version" of a separate defense asserted by defendant).

Similarly, Defendant's Fourth defense should also be struck because it is redundant of and included in the Seventeenth defense.  The Fourth defense states:

> To the extent plaintiff seeks to recover punitive or exemplary damages against the
> United States of America, the defendant pleads the defenses of sovereign
> immunity and lack of subject matter jurisdiction, under 28 U.S.C. §2674.

ECF No. 16 at p. 15.  The Seventeenth defense is virtually identical, except that it also includes

*agents* of the United States:

> To the extent plaintiff seeks to recover punitive or exemplary damages against the
> United States *or its agents*, the defendant pleads the defenses of sovereign
> immunity and lack of subject matter jurisdiction, under 28 U.S.C. §2674.

*Id.* at 17 (emphasis added).  Because the Seventeenth defense is entirely inclusive of the Fourth

defense, the Court should strike the Fourth defense as redundant and unnecessary.

## II.    Defendant's Fourth and Seventeenth Defenses Should Be Struck Because They Are Inapplicable and Legally Insufficient.

The Fourth and Seventeenth defenses, in addition to being redundant, should also be

struck because Ms. Quiñonez is not seeking punitive damages from the United States.  The

Complaint only seeks punitive damages as to individual agents pursuant to the Fourth and Fifth

Claims for Relief brought for constitutional violations pursuant to *Bivens*.  *See* ECF No. 12, p.

25.  Accordingly, the United States is not subject to punitive damages in this action, making the

Fourth defense further inapposite and strike-worthy due to its legal insufficiency.  A claim

asserted pursuant to the theory recognized in *Bivens* is *by definition* an individual capacity claim-

-it cannot be maintained against the United States.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994);

*Carlson v. Green*, 446 U.S. 14, 21 (1980); *Sterling v. United States*, 85 F.3d 1225, 1228-29 (7th

Cir. 1996) (an action seeking only monetary relief from individual federal officials for a

constitutional violation may be brought as a *Bivens* action "to avoid the sovereign immunity that

would block an action against the United States.")  Thus, the identical portions of the Fourth and

Seventeenth defenses relating to the United States' asserted sovereign immunity are insufficient,

unsuitable, and should be struck where no punitive damages are sought against that entity.

6

As to the individual government agents sued herein, punitive damages are appropriate because the purpose of *Bivens* is to deter individual federal officers from violating the constitutional rights of others. *Meyer,* 510 U.S. at 485.  Therefore, based on the sufficiently specified allegations of constitutional violations contained in the Complaint's Fourth and Fifth Causes of Action, *see* ECF No. 12, pp. 19-25, the agents are properly subject to punitive damages in this action under *Bivens*, such that the Seventeenth defense, as to the agents, is also inappropriate and subject to striking because it is an insufficient defense in this instance.  *See Carlson*, 446 U.S. at 22 ("[P]unitive damages may be awarded in a *Bivens* suit.").

## III.    Defendant's Ninth Defense Should Be Struck As Legally Insufficient Because Venue Is Proper in the Eastern District of New York.

Defendant's Ninth defense is legally insufficient because Ms. Quiñonez has established proper venue in the Eastern District of New York ("EDNY").  Defendant asserts that Ms. Quiñonez "cannot premise venue upon her domicile" because she "is not lawfully present in the United States."  ECF No. 16, p. 15.  As a preliminary matter, Ms. Quiñonez is not "unlawfully present" because she has a pending application for asylum, as Defendant admits.  *Id.* at para. 8(c).  Asylum applicants are authorized to remain in the United States while their applications are pending, and have access to certain benefits and privileges not available to other aliens. According to the official policy of United States Citizenship and Immigration Services ("USCIS"), an "alien, whose bona fide application for asylum is pending, is in an authorized period of stay and does not accrue unlawful presence for purposes of section 212(a)(9)(B) of the [Immigration and Nationality] Act . . .."  Donald Neufeld, USCIS Acting Assoc. Director, *Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act*, p. 29, May 6, 2009, *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009

/revision_redesign_AFM.PDF.  Consistent with the authorization to remain in the United States, asylum applicants are eligible to work in the United States after their application has been pending for 180 days.  *See* 8 U.S.C. §1158(d)(2); 8 C.F.R. §208.7.  Additionally, asylum applicants are considered lawfully present for purposes of participating in the health insurance exchanges established by the Affordable Care Act of 2010, Pub. L. No. 11-148, 124 Stat. 119.  *See* 45 C.F.R. §152.2.  Ms. Quiñonez's status as an asylum applicant authorizes her to be lawfully present is the U.S., and she is thus not "unlawfully present," as Defendant asserts in its Ninth defense.

Moreover, Ms. Quiñonez has established proper venue in the EDNY based on her residence under the plain meaning of 28 U.S.C. §1391(e).  Under §1391(e)(1)(C), a plaintiff can bring an action against federal officials acting in their official capacity, a federal agency, or the United States where "the plaintiff resides if no real property is involved in the action."  For the purpose of determining proper venue, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which the person is domiciled."  §1391(c)(1).  The provision does not exclude any class of persons, based on alienage, immigration status, or otherwise, from establishing residency for venue purposes.  Under the plain meaning of the general venue statute read as a whole, Ms. Quiñonez has established proper venue in the EDNY pursuant to §1391 because she resides in the EDNY.  *See Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) ("When interpreting a statutory provision, we begin with the language of the statute.  If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words."); *Mohammed v. Palestinian Auth.*, 566 U.S. ___, 132 S.Ct. 1702, 1709 (2012) ("[R]eliance on legislative

history is unnecessary in light of the statute's unambiguous language.") (internal citations omitted); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984).

Ms. Quiñonez is deemed to reside in the EDNY according to both the legal definition of residency under the Immigration and Nationality ("INA") and under New York state law. The INA defines residence as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."   8 U.S.C. §1101(a)(33).   Ms. Quiñonez clearly satisfies the INA's definition of residence because her "principal, actual dwelling place" is in the EDNY.

Under New York law, the "term 'reside' (or 'residence') is not one that can be given a uniform definition wherever it appears in legislation, but must be construed in relationship to the particular statute involved." *Allstate Ins. Co. v. Chia-I Lung*, 131 Misc. 2d 586, 589, 501 N.Y.S.2d 260, 262-63 (N.Y. Sup. Ct. 1986).  For instance, for tax purposes, a resident individual is someone "who is domiciled in" New York (N.Y. Tax Law §605(b)(1)(A)), and an "individual's domicile is established by physical presence and an intent to establish a permanent home." *Warnecke v. Tax Appeals Tribunal*, 676 N.Y.S.2d 286, 287 (N.Y. App. Div. 1998).  In New York state court, "[a]lthough a person may have more than one residence for venue purposes, to consider a place as such, he must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency." *Katz v. Siroty*, 62 A.D.2d 1011, 1012, 403 N.Y.S.2d 770, 771 (N.Y. App. Div. 1978) (internal citation omitted).  Under New York election law, the term "residence" means "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." N.Y. Elec. Law §1-104.  And in New York surrogacy proceedings, a person's domicile is a "fixed, permanent and principal home to

which a person wherever temporarily located always intends to return." N.Y. Surr. Ct. Proc. Act

Law §103. *See also Matter of Guardianship of Lofantant*, 161 Misc. 2d 840, 841, 617 N.Y.S.2d

292, 293 (N.Y. Sur. Ct. 1994) (undocumented alien's immigration status "is immaterial to the

issue of his domicile" in New York). Under any of these various legal definitions of residence or

domicile, Ms. Quiñonez would be deemed to reside in the EDNY because she is physically

present in the district, intends to establish a permanent home there, and always intends to return

to her home in the district. *See Elkins v. Moreno*, 435 U.S. 647, 666 (1978) (Issue of domicile of

an alien in a state is "a question to be decided by the State."). Thus, based on her residence, Ms.

Quiñonez satisfies proper venue in the EDNY under §1391(e)(1)(C).

      Even if the statutory language of §1391 were ambiguous, the legislative history does not

suggest any congressional intent to deprive an asylum applicant, such as Ms. Quiñonez, of the

ability to establish venue based on residence. The language specifically including lawful

permanent residents in §1391(c) of the venue statute was not added until the enactment of the

Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("FCJVC"). Pub. L. No. 112-

63, 125 Stat. 758. According to the House of Representatives' Judiciary Committee report on

the FCJVC,

> An alien can obtain a "lawful domicile" in the United States only if he or she has
> the ability under the immigration laws to form the intent to remain in this country
> indefinitely . . . Such an interpretation of domicile under the venue statute as
> including lawful intent to remain would foreclose the possibility that an
> undocumented alien would be regarded as a domiciliary of the United States for
> venue purposes.

H.R. Rep. 112-10, n. 16 (2011) (citing *Castellon-Contreras v. INS*, 4 F.3d 149 (7th Cir. 1995);

*Madrid-Tavarez v. INS*, 999 F.2d 111 (5th Cir. 1993)). This statement from Congress lacks the

intent to deprive an asylum applicant authorized to remain in the U.S. from establishing venue

based on residence pursuant to §1391.  In fact, Ms. Quiñonez's pending asylum claim, filed pursuant to the INA, patently establishes that she currently has "the ability under the immigration laws to form the intent to remain" in the United States, where the application specifically requests authorization to remain.

The Second Circuit Court of Appeals has expressly stated that "lawful domicile" in the United States does not require permanent resident status.  *Lok v. INS*, 681 F.2d 107, 108 (2d Cir. 1982).  An alien can establish lawful domicile when she establishes an intent to remain in the United States and her intent to remain is "legal under the immigration laws."  *Id.* at 109.  An alien does not have to be a lawful permanent resident in order to possess a "lawful intent to remain."  *Id.* (citing *Elkins*, 435 U.S. at 665-68 (1978)).  Ms. Quiñonez is lawfully domiciled in New York because she has a lawful intent to remain in the United States based on her pending asylum application.  Thus, since venue is proper in the EDNY where Ms. Quiñonez is domiciled, Defendant's Ninth defense should be struck for insufficiency.

## IV.     Tenth Defense--Inconvenient Forum

Defendant's Tenth defense asserts that this case should be transferred to the District Court for the Southern District of Texas, pursuant to 28 U.S.C. §1404(a), because that forum is "where the events giving rise to the complaint took place, will serve the convenience of the parties, convenience of the witnesses, ease of access to proof, and the interests of justice."  ECF No. 16, p. 16.  This defense is insufficient because transfer is not warranted under §1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Moreover, "[i]n any motion to change venue, the movant bears the burden of establishing the propriety of transfer by clear and convincing evidence." *Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 362 (E.D.N.Y. 2009); *see also Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 444 (E.D.N.Y. 2012) ("The burden of demonstrating the desirability of transfer lies with the moving party, and the burden is a heavy one.") (citation omitted); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 721 (E.D.N.Y. 1996) ("The plaintiff's choice of forum should only be disturbed if that choice is completely and utterly outweighed by the severe inconvenience of the defendant.")   Thus, Defendant must affirmatively establish the propriety of the proposed transfer.  *Merkur v. Wyndham Int'l Inc.,* 2001 WL 477268, at *1 (E.D.N.Y. March 30, 2001) (The moving party bears the burden of clearly establishing that a transfer is appropriate and that the motion should be granted.)  In determining whether transfer is proper under §1404(a), the Second Circuit Court of Appeals considers "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 341, 343 (S.D.N.Y. 2002).  Comprehensive consideration of all of these various factors reveals that the circumstances in this case clearly weigh in favor of maintaining venue in the EDNY.

A.     Plaintiff's Choice of Forum

Ms. Quiñonez's choice of forum in this district weighs heavily against transfer of the case to Texas.  "A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." *Neil Bros. v. World*

*Wide Lines, Inc.*, 425 F. Supp. 2d 325, 333 (E.D.N.Y. 2006); *see also Iragorri v. United Techs. Corp.,* 274 F.3d 65, 70 (2d Cir.2001) (" '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' ") (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).  Heightened deference should be given to Ms. Quiñonez's choice of forum because she resides in the EDNY.  *See Tawil v. Target Corp.*, 2010 WL 2719831, at *2 (E.D.N.Y. July 8, 2010) ("[P]laintiffs' primary residence is in New York and, accordingly, their choice of forum should be given great weight.").

B.   <u>Convenience of the Witnesses</u>

The location of non-party witnesses is generally the most important factor to consider in ruling on a §1404(a) motion.  *See Romano v. Banc of Am. Insurances Servs.*, 528 F. Supp. 2d 127, 131 (E.D.N.Y. 2007).  This factor also weighs against transfer because none of Defendant's potential non-party witnesses[1] would be substantially inconvenienced if required to travel to New York to testify.    The vast majority of Defendant's potential non-party witnesses would be either paid experts or employees of the United States, who are entitled to very little deference regarding any potential inconvenience.  *See Carr v. Ensco Offshore Co.*, No. CIV A G-06-629, 2007 WL 760367, at *2 (S.D. Tex. Mar. 8, 2007) ("Generally, the Court gives very little consideration to the convenience of witnesses who are still employed by Defendant."); *Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 29, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily.").  Moreover, if any potential non-party witness is unable to travel to New York, videotaped deposition testimony would be an adequate substitute for live testimony.  *See Lesser*

---

[1] In its Initial Disclosures, Defendant only identified three potential non-party witnesses.  *See* <u>Exhibit B</u>, Defendant's Initial Disclosures.

*ex rel. Lesser v. Camp Wildwood*, No. 01 CIV. 4209 (RWS), 2002 WL 1792039, at *4 (S.D.N.Y. Aug. 2, 2002) ("Where deposition testimony is an available alternative to live testimony, the convenience of the non-party witness does not favor a transfer.").  As an additional matter, medical professionals familiar with Ms. Quiñonez's health who are likely to testify all reside in New York, and a witness who was detained with Ms. Quiñonez was last known to be in Florida.

    C.    <u>Convenience and Relative Means of the Parties</u>

When balancing the convenience of the parties, "a transfer of venue should not merely shift the burden of inconvenience from one party to the other."  *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000).  Transferring this case to Texas would only serve the purpose of improperly shifting the inconvenience from Defendant, the United States of America, to Ms. Quiñonez, an individual of very modest means. Ms. Quiñonez would be heavily and unduly burdened by having to litigate this case in Texas based on her serious health problems and very limited financial means.  Ms. Quiñonez suffers from, and is under treatment for, diabetes, hypertension, cardiac problems, migraines, depression, and anxiety disorder.  She recently suffered a condition which is causing her difficulty in walking and her diabetes is currently uncontrolled.  These health problems would make repeated trips between New York and Texas extremely demanding and onerous for Ms. Quiñonez.  *See NGC Worldwide, Inc. v. Siamon*, No. 3:02CV1760 (JBA), 2003 WL 1987001, at *2 (D. Conn. Apr. 21, 2003) ("The health concerns of a party or witness can be an important factor in the determination of whether a § 1404(a) transfer is proper.")

In addition to Ms. Quiñonez's health concerns, her relative financial means as compared to the United States strongly weighs against transferring the case to a distant district.  When deciding whether to transfer venue, the relative means of the parties "is important[,] primarily

when a disparity exists between the[m]." *Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc*., No. CV-99-2491, 2000 WL 33155640, at *8 (Sept. 15, 2000 E.D.N.Y).   In this instance, an apparent disparity exists where Ms. Quiñonez, an asylum seeker, is represented by a non-profit legal services organization and pro bono counsel because she is otherwise unable to afford legal representation and has orders of magnitude fewer resources than the United States. *See Jones v. U.S.*, No. 02-CV-1017, 2002 WL 2003191, at *3, (Aug. 26, 2002 E.D.N.Y) (Presuming that *Bivens* plaintiff had modest means compared to U.S. government without the need for documentation from plaintiff).   Having to litigate this action in Texas would place a substantial burden on Ms. Quiñonez who is currently not employed and living with relatives due to her financial circumstances.   It would be incredibly difficult, if not impossible, for Ms. Quiñonez to muster the funds needed to repeatedly travel between New York and Texas.   As compared to Ms. Quiñonez, Defendant has substantially greater means to defend this action in the EDNY or any other venue.   Accordingly, this factor weighs very heavily against transfer considering the massive disparity in resources between Defendant and Ms. Quiñonez.

D.    Relative Ease of Access to Sources of Proof

The ease of access to sources of proof is virtually a non-issue in this case.   Any potential documents needed by either party can easily be converted to electronic form, if they have not been already. *See Timberland Machines, and Irrigation*, *Inc. v. Echo, Inc*., 2009 WL 996044, *5 (D. Conn. 2009) ("[T]he court finds that the location of the relevant documents is a non-issue in today's world because copy machines and electronic based discovery make it much easier to obtain documents at a distance."); *Illinois Nat. Ins. Co. v. Banc One Acceptance Corp*., 2008 WL 5423262, *7 (N.D.N.Y. 2008) ( "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

15

Furthermore, the volume of documents, some of which have already been exchanged by the parties, is not expected to be substantial due to the straightforward nature of the claims which rely more heavily on testimony.  Moreover, many of the documents in Defendant's possession are likely maintained in digital databases accessible from multiple and remote locations.

E.    The Locus of Operative Facts

While many of the events giving rise to Ms. Quiñonez's claim did occur in Texas, this single factor does not satisfy Defendant's heavy burden of demonstrating that this case should be transferred.  Additional events relevant to the case occurred in venues outside of Texas, namely, her continued medical issues while detained in Florida, as well as her medical treatment in New York after her release from detention.  And in determining whether a transfer is appropriate, the Court weighs the various factors collectively to make a comprehensive assessment.  Further, the conditions of immigration detention involve issues of nationwide concern that are not specifically localized in southern Texas.  Finally, the evidence in this case will primarily take the form of documents and witness testimony.

F.    The Availability of Process to Compel the Attendance of Unwilling Witnesses

The availability of process to compel the attendance of any of Defendant's witnesses is a non-factor.  Based on the facts at issue, Defendant's Initial Disclosures, and the preliminary exchange of documents between the parties, all the defense witnesses will either be the individual defendants themselves or employees of the United States.  Thus far, Defendant has not indicated that any of its potential witnesses or employees would be unwilling to appear in this action as necessary.  Even if employee witnesses become unwilling to testify, their attendance can be compelled by virtue of their relationship to the United States as their employer.  *See Pecorino*, 934 F. Supp. 2d at 442 ("[E]mployee witnesses are subject to compulsory process in

either forum by virtue of their employment relationship with a party"); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) ("Because parties can compel the testimony of their own employees without the need for subpoena . . . this factor has no impact on the analysis."); *Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.,* No. 07 Civ. 1191, 2008 WL 4890377, at *4 (N.D.N.Y. Nov. 12, 2008) ("[A]ny employees of a party, despite their geographic location, can reasonably be expected to testify as witnesses at trial and their availability is not a consideration here").  Further, in the event that a witness is unwilling to travel to New York to testify, "this factor does not weigh in favor of transfer in light of the option of videotaping testimony of witnesses unwilling to travel."  *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y. 2003).  Thus, this factor has little impact on assessing the transferability of the case and should therefore receive commensurate weight.

G.      Desirability of Having Case Tried by Forum Familiar with Substantive Law

A final relevant factor in determining transferability of a case is the desirability of trying the case in a forum that is familiar with the applicable substantive law.  *See, e.g., Laumann Mfg. Corp.*, 913 F. Supp. at 720.  However, this factor does not weigh in favor of transfer because Ms. Quiñonez's constitutional claims involve questions of federal law and her FTCA claims are all relatively simple tort claims.  All of the legal questions regarding Ms. Quiñonez's *Bivens* claims for violations of her Fifth Amendment rights are matters of federal law.  *See Carlson*, 446 U.S. at 23 ("*Bivens* actions are a creation of federal law, and, therefore" an issue regarding a *Bivens* action "is a question of federal law.")  This Court is situated just as well as any other federal district court to adjudicate Ms. Quiñonez's claims arising under the United States Constitution. *See Wilson v. DirectBuy*, *Inc.*, 821 F. Supp. 2d 510, 519 (D. Conn. 2011) ("Federal courts are presumed to be equally familiar with federal law.").

17

Moreover, with regard to Ms. Quiñonez's FTCA claims, this Court would have no trouble readily applying basic Texas tort law. Ms. Quiñonez's FTCA claims for negligence, negligent supervision, and intentional infliction of emotional distress involve rather simple Texas tort law issues. *See Merkur,* 2001 WL 477268 at *5 ("[W]here an action does not involve complex questions of another state's laws, courts in this district accord little weight to this factor on a motion to transfer."); *Hawley v. Accor North Amer., Inc.*, 552 F. Supp. 2d 256, 261 (D. Conn. 2008) (personal injury cases are generally not complex and court in Connecticut is familiar enough with general personal injury law to apply Arizona law). Where the action involves a relatively simple case, "the fact that a New York court would apply [Texas] law is of little consequence in the determination of this motion." *Schwartz v. Marriott Hotel Services, Inc.* 186 F.Supp.2d 245, 247 (E.D.N.Y. 2002) (quoting *Dwyer v. General Motors Corp.,* 853 F. Supp. 690, 695 (S.D.N.Y. 1994)). Overall, Defendant cannot satisfy its burden of showing that transfer is warranted pursuant to 28 U.S.C. §1404(a) under any set of circumstances, and accordingly, the Tenth defense should be struck as insufficient.

## V.   Defendant's Nineteenth Defense Should Be Struck As Legally Insufficient Because the Court Clearly Has Subject Matter Jurisdiction.

Defendant's Nineteenth defense states that the "complaint should be dismissed to the extent it advances claims over which the Court lacks subject matter jurisdiction." ECF No. 16, p. 17. This defense is legally insufficient because the Court plainly maintains subject matter jurisdiction over all of Ms. Quiñonez's claims where they arise under federal question jurisdiction, namely the FTCA, the authority of *Bivens*, and the Fifth Amendment of the United States Constitution. *See* 28 U.S.C. §1331 (federal question jurisdiction); §1343 (jurisdiction over civil rights claims); §1346 (jurisdiction over cases in which the United States is the defendant).

18

**VI.** **The Court Should Strike the Twentieth, Twenty-First, Twenty-Second and Twenty-Third Defenses Because They Have No Relation and Are Immaterial to Ms. Quiñonez's Claims.**

Defendant's Twentieth, Twenty-first, Twenty-second and Twenty-third defenses are all subject to striking because they are simply impertinent and immaterial defenses.  In enumerated order, these defenses seek to dismiss the Complaint "to the extent it challenges detention that is required by the Immigration and Nationality Act"; "to the extent it challenges the Defendant's decision to place the Plaintiff in a removal proceeding or execute a removal order"; "to the extent it challenges the Defendant's decision to detain Plaintiff"; "to the extent it challenges the Defendant's determination of inadmissibility and/or refusal of Plaintiff's admission to the United States."  ECF No. 16, pp. 17-18.  However, the Complaint does not seek to challenge Ms. Quiñonez's detention, Defendant's decision to detain her, Defendant's determination of inadmissibility, or its decision to place her in removal proceedings.  The Complaint focuses on the *conditions* of her detention and not the fact of detention itself, thus, these four defenses are plainly improper and immaterial and should thus be struck accordingly.

Furthermore, the Twentieth and Twenty-second defenses are also subject to striking as repetitive because they both request dismissal of the Complaint to the extent it seeks to challenge Ms. Quiñonez's detention as well as the decision to detain her – neither of which she challenges in the Complaint.  Similarly, the Twenty-first and Twenty-third defenses are also subject to striking due to superfluousness and redundancy where a determination of inadmissibility is incorporated in and a necessary precursor to a decision to initiate removal proceedings, such that any challenge to removal would inherently include a challenge to a determination of inadmissibility.  Accordingly, the Twenty-first and Twenty-third defenses should be struck

because they are redundant, and further, because Ms. Quiñonez does not seek to challenge either assertion in the Complaint.

## **CONCLUSION**

For the foregoing reasons, Ms. Quiñonez respectfully requests that the Court strike Defendant's Third, Fourth, Ninth, Tenth, Seventeenth, Nineteenth, Twentieth, Twenty-first, Twenty-second, and Twenty-third defenses.

Dated: December 12, 2014

                                  Respectfully submitted,

                                    /s/ Ira J. Kurzban
                                    Ira J. Kurzban (*pro hac vice*)
                                    Kurzban, Kurzban, Weinger
                                    Tetzeli & Pratt, P.A.
                                    2650 S.W. 27th Ave.
                                    Second Floor
                                    Miami, Florida 33133
                                    Phone: (305) 444-0060
                                    Fax:    (305) 444-3503
                                    Email: ira@kkwtlaw.com

                                    /s/ Jennie Santos-Bourne
                                    Jennie Santos-Bourne (*pro hac vice*)
                                    Americans for Immigrant Justice
                                    3000 Biscayne Blvd.
                                    Suite 400
                                    Miami, Florida 33137
                                    Phone: (305) 573-1106
                                    Fax:    (305) 576-6273
                                    Email: jsantos@aijustice.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2014, I filed the foregoing document and all attached exhibits with the Clerk of Court, using the CM/ECF system, which will send a notification of such filing to the following:

> Margaret M. Kolbe
> Assistant U.S. Attorney
> United States Attorney's Office
> 271 Cadman Plaza East, 7th Floor
> Brooklyn, New York 11201
> Margaret.Kolbe2@usdoj.gov

And I hereby certify that I mailed the foregoing document by U.S. Mail to the following non-filing user:

> None

/s/Ira J. Kurzban
Ira J. Kurzban