UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
ALBA QUIÑONEZ FLORES,

         Plaintiff,

  v.

UNITED STATES OF AMERICA;
DOES 1-10

         Defendants.
---------------------------------------------------------x

PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSTION TO DEFENDANT'S MOTION TO CHANGE VENUE

Civil Action No. 14-CV-3166 (JBW) (RML)

Hearing Date: June 9, 2015 at 11:00am

Plaintiff Alba Quiñonez Flores ("Ms. Quiñonez" or "Plaintiff") hereby files her Supplemental Brief in Opposition to Defendant's Motion to Change Venue pursuant to the Court's May 12 Scheduling Order [ECF No. 58]. Ms. Quiñonez has brought this action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, and against currently unidentified Customs and Border Patrol ("CBP") agents in their individual capacities for violations of her rights under the Fifth Amendment to the United States Constitution in accordance with *Bivens v. Six Unknown Defendants of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Ms. Quiñonez's claims are based on the mistreatment she suffered and the abysmal conditions of confinement to which she was subjected while in immigration detention in Texas. *See* Second Amended Complaint, ECF No. 12, pp. 6-14. Specifically, Ms. Quiñonez has sued the United States for negligence, negligent supervision, and intentional infliction of emotional distress, and she has sued the individual CBP agents for

1

deprivation of reasonable medical care and inhumane conditions of confinement in violation of the Fifth Amendment to the United States Constitution. *See id.* at 14-25.[1]

## BACKGROUND

Currently pending before the Court are Plaintiff's Motion to Strike Defendant's Affirmative Defenses [ECF No. 18] and Defendant's Motion to Change Venue Pursuant to 28 U.S.C. § 1404(a) [ECF No. 20]. After both of the motions were filed and briefed, the Court ordered Magistrate Judge Levy to expedite discovery in this case in order to "assist the court in assessing the merits of the case and other relevant factors in deciding venue." Order, January 16, 2015, ECF No. 26. Pursuant to the Court's order, both parties have engaged in extensive discovery up to this point. Ms. Quiñonez and Defendant have each served and responded to interrogatories and requests for document production that have resulted in the production of over 1,000 pages of documents. Additionally, each of the parties has conducted two depositions: Defendant has deposed Ms. Quiñonez, *see* Ex. A, Excerpts from the Deposition of Alba Quiñonez Flores, and her partner Wilfredo Sandoval Flores ("Mr. Sandoval"); Ms. Quiñonez has conducted videotaped depositions Border Patrol Agent Allen Foster ("Mr. Foster"), *see* Ex. B, Excerpts from the Deposition of Allen Foster, and Deputy Patrol Agent in Charge ("Deputy PAIC") Thomas Slowinski, *see* Ex. C, Excerpts from the Deposition of Thomas Slowinski. Finally, a photo array was conducted where Ms. Quiñonez was able to identify seven CBP agents who were present during her detention at Falfurrias Border Patrol Station, including the agent who threw away her prescribed medications and the agent who refused to provide her with

---

[1] Although not relevant to Ms. Quinonez' causes of action regarding conditions of confinement, a statement in her complaint mentioned that she had been subject to "domestic violence" prior to her encounter with CBP. Ms. Quinonez was subject to horrific violence in Guatemala causing her to flee the country. She was subject to rape, battery, assault and other violent actions against her person. These actions were not "domestic" because they did not arise from any family members or relatives. To the extent the complaint suggests otherwise, plaintiff requests that the word "domestic" be stricken from the complaint.

medication when she requested it. *See* Ex. A, pp. 5-15, 151, 246-247; Compl. at ¶16. Given the amount discovery conducted up to this point that goes directly to the merits of Ms. Quiñonez's claims, the Court should continue to exercise jurisdiction over this case and deny Defendant's Motion to Change Venue. Evidence, obtained through discovery, of gross negligence and malfeasance on the part of CBP agents at the Falfurrias Border Patrol Station is detailed below.

## DISCUSSION

**I.  CBP Agents Are Oblivious to the Provisions of CBP's Official Hold Rooms and Short Term Custody Policy.**

The only comprehensive written policies in place for the treatment and management of detainees at the Falfurrias Border Patrol Station are contained in the U.S. Border Patrol Policy statement entitled "Hold Rooms and Short Term Custody," ("Hold Room Policy") attached to the Complaint as Exhibit A [ECF No. 12-1]. *See* Ex. D, Defendant's Response to Plaintiff's Interrogatory No. 14. Nonetheless, during their depositions, both a low-level Border Patrol Agent stationed at Falfurrias (Allen Foster) and the second in command at Falfurrias Border Patrol Station (Deputy PAIC Thomas Slowinski) expressed virtually no knowledge of the only official written policies which govern their actions towards detainees.

Except for during the days immediately prior to his deposition, Mr. Foster has no idea when the last time he actually read the Hold Room Policy was. *See* Ex. B, p. 97. He also does not remember if he received specific training based on the Hold Room Policy, whether he ever received a copy of the policy, and does not know if the policy is posted anywhere at the Falfurrias facility. *Id.* at 98. Deputy PAIC Slowinski, the second in command at Falfurrias, stated that while agents are required to be familiar with the Hold Room Policy, he has no idea whether agents are provided a copy, when or how training related to the Hold Room Policy is conducted, or whether there is any sort of examination or other procedure to ensure that agents

are familiar with and understand the policy.  *See* Ex. C, pp. 58-61.  He did, however, state that the policy is posted in the processing area of the Falfurrias facility, *id.* at 59-60, which casts serious doubt on how familiar CBP agents really are with the policy if they are not even aware whether the policy is posted anywhere.  *See* Ex. B, p. 98.  It is clear from the testimony of these two CBP personnel that agents at Falfurrias do not bother to familiarize themselves with the Hold Room Policy in order to adequately fulfill the responsibilities owed to detainees and CBP leadership does not make any serious effort to ensure that first line agents maintain proficiency in performing the duties outlined in the policy.

## II. CBP Agents at Falfurrias Maintain No Procedures To Comply With the Hold Room Policy.

The depositions of Mr. Foster and Mr. Slowinski demonstrate that CBP agents do not have any procedures in place to even attempt to comply with many of the requirements of the Hold Room Policy.  For example, paragraph 6.11 of the policy states that "Detainees requiring bedding will be given clean bedding."  ECF 12-1, p. 8.  However, bedding is never provided to any detainees at Falfurrias and there is no standard by which agents determine if a detainee requires bedding.  *See* Ex. B, pp. 42-43; Ex. C, pp. 78-81.  Deputy PAIC Slowinski justified the lack of bedding by pointing out that Falfurrias is "not a long term facility," even though he admits it is possible for someone to be detained there for two weeks and knows of detention periods lasting up to a week.  *See* Ex. C, pp. 79, 42.  According to Deputy PAIC Slowinski, at most, CBP agents provide detainees with only a blanket.  *See* Ex. C, p. 81.  Such a blanket was never provided to Ms. Quiñonez by any agent and she was only able to acquire one left behind by another detainee on the last night of her detention at Falfurrias.  *See* Ex. A, p. 210.  Due to the absence of bedding at Falfurrias, Ms. Quiñonez was forced to sleep on the floor the entire three

day period she was detained at the Falfurrias facility, despite the fact that she should have been provided bedding pursuant to CBP policy. *Id.* at 214.

The Hold Room Policy also clearly states that "Detention space capacity will not be exceeded." ECF No. 12-1, p. 13, ¶7.1.2. However, CBP agents at Falfurrias do not seem to have any measure of what the detention space capacity is. Mr. Foster is completely unaware of what the maximum detainee capacity at Falfurrias is, and only assumes that there must be one. *See* Ex. B, p. 49. More troubling, Deputy PAIC Slowinski, the second most senior agent at Falfurrias, also does not know or have any estimate as to what the maximum capacity is for detainee holding rooms. *See* Ex. C, pp. 28-32. Ms. Quiñonez testified that only 10 to 15 people *sitting down* (not sleeping) would fit into the holding cell where she was detained, but on average there were 15 to 20 people in her cell, making the cell grossly overcrowded for people kept overnight. *See* Ex. A, pp. 212-213; Comp. ¶18. Although, the Hold Room Policy clearly states that "[d]etention space capacity shall not be exceeded," CBP agents at Falfurrias have not even bothered to determine at what point the maximum capacity for detention space is met.

Finally, although the air temperature of detention facilities is not specifically addressed by the Hold Room Policy, the policy does state that "detainees will be held under humane conditions of confinement that provide for their well being and general good health." ECF No. 12-1, p. 13, ¶7.2. Maintaining the facility at temperatures that caused Ms. Quiñonez to constantly shiver, turned her fingers blue, and split her lips without ever providing her with a blanket certainly does not comport with "humane conditions of confinement." *See* Compl. ¶19; Ex. A, p. 210. The holding rooms' reputation is such that CBP agents routinely refer to the cells as *hieleras*, which is Spanish for "ice boxes." *See* Ex. A, pp. 182-183; Compl. ¶¶ 2, 13. The only means by which CBP controls the temperature is by off-site electronic monitoring, and

5

agents at Falfurrias must call outside maintenance personnel in order to change it. Ex. C, p. 89. Deputy PAIC Slowinski knows of such a call occurring only one time. *Id.*

### III. CBP Agents Actively Denied Ms. Quiñonez Access to the Medications She Required.

The Hold Room Policy mandates that "Detainees have access to appropriate medical services, prescriptions, medications, and emergency medical treatment." ECF No. 12-1, p. 13, ¶7.2.3. Mr. Foster and Deputy PAIC Slowinski both described procedures that supposedly exist at Falfurrias to ensure that detainees have access to medication when they need it. Mr. Foster stated that if a detainee was apprehended with medication that she said she needed, he would inform a supervisor who would have medical personnel examine that detainee. *See* Ex. B, pp. 113-114. Mr. Foster further testified that "Anybody that comes in with medication we'll let the supervisor know" and that medication would not discarded upon a detainee's arrival to the Falfurrias facility. *Id.* at pp. 115-116. Deputy PAIC largely echoed Mr. Foster and stated that if a detainee informs a CBP agent that she requires medication, that agent will notify his or her supervisor. *See* Ex. C, p. 74.

Ms. Quiñonez's experience at Falfurrias differs markedly from the procedures described by Mr. Foster and Deputy PAIC Slowinski. Rather than make any attempt to make sure that Ms. Quiñonez had access to prescription medications that she desperately needed, CBP agents did everything they could to actively deny her access to any medications until she had a medical emergency. When Ms. Quiñonez arrived at the Falfurrias facility, she possessed several prescription medications that were critical to her health: insulin and metformin to treat her diabetes; enalapril to treat her hypertension; antidepressants to treat her chronic depression; and Tramal to treat migraine headaches. *See* Ex. A, pp. 166-177; Compl. at ¶15. However, contrary to the procedures described by Mr. Foster and Deputy PAIC Slowinski, the first CBP agent to

6

inspect Ms. Quiñonez at the Falfurrias facility summarily threw all of her medication away without consulting anyone and told her that "this is not a hospital." *See id.*, pp. 151, 231; Compl. ¶16. Ms. Quiñonez positively identified this agent during the photo array and he is not a supervisor. *See* Ex. A, p. 9. Later on, Ms. Quiñonez told another agent that she required her medication and, without consulting with anyone, told her that there was nothing he could do. *See* Ex. A, pp. 14-15, 247. Ms. Quiñonez also identified this agent during the photo array. *See id.* at 14-15.

Compounding the problems associated with Ms. Quiñonez's untreated diabetes, CBP agents also refused to provide her with sandwiches at mealtime because she was unable to physically walk to the sandwich distribution point and the agents would not allow another detainee to retrieve a sandwich for her. *See id.* at 216-17; Compl. at ¶31. As result of CBP agents' actions to deny Ms. Quiñonez the medications she required, she eventually felt nauseous while sitting in her detention cell. *See id.* at 220-21. While making her way to the toilet, Ms. Quiñonez lost consciousness and collapsed on the floor in a pile of used toilet paper. *See id.* at 221; Compl. ¶34. When she regained consciousness, CBP agents dragged her away from the toilet paper and she laid on the floor (the same hard floor where she was forced to sleep) for the next several hours until she was transported to a hospital. *See* Ex. A. at 221-22. This syncopal episode should have come as no surprise to CBP agents who discarded a diabetic woman's prescribed diabetes medication, failed to make any attempt to provide replacement medication, and denied her access to food because she was unable to personally receive it.

**IV.     The Amount of Completed Discovery and Discovery That Remains to Be Conducted Strongly Counsels Against Transferring This Case.**

The progress already made in discovery by both parties to this action plainly demonstrates that the Court should not transfer the case. The overwhelming majority of the

document discovery has been completed. Defendant has already deposed Ms. Quiñonez and the only person with whom she lives. While Ms. Quiñonez will likely seek to depose some of the officers identified during the photo array in Texas and possibly a few other out of state deponents, all of the other witnesses that Ms. Quiñonez will utilize in the litigation—her doctors, medical expert, and conditions of confinement expert—will either be located in New York or somewhere other than Texas. Accordingly, any remaining depositions conducted by Defendant are likely to occur in New York and most of the remaining witnesses needed for trial will be located in New York. As there is very little remaining discovery to be conducted in this action, most of which will be conducted in New York, Ms. Quiñonez is ready to resolve this case and proceed to trial within the next 90 days. Transferring this case would result in a waste of resources, as both the potential transferee Court and new taxpayer funded counsel for Defendant would have to spend a significant amount of time becoming familiar with the case. The quickest and most efficient way that this lawsuit will be fully resolved is if the Court retains jurisdiction and denies Defendant's Motion to Change Venue.

## **CONCLUSION**

Given the amount of discovery that has been conducted in this case which points to severe negligence and malfeasance by CBP agents at the Falfurrias Border Patrol station, as well as for the reasons contained in Plaintiff's Motion to Strike Defendant's Affirmative Defenses [ECF No. 18] and Response to Defendant's Motion to Change Venue [ECF No. 24], Ms. Quiñonez respectfully requests the Court to deny Defendant's Motion to Change Venue [ECF No. 20] and continue to exercise jurisdiction over this case.

Dated: May 26, 2015

                                                        Respectfully submitted,

                                                        /s/ Ira J. Kurzban
                                                        Ira J. Kurzban (*pro hac vice*)
                                                        Kurzban, Kurzban, Weinger
                                                        Tetzeli & Pratt, P.A.
                                                        2650 S.W. 27th Ave.
                                                        Second Floor
                                                        Miami, Florida 33133
                                                        Phone: (305) 444-0060
                                                        Fax:   (305) 444-3503
                                                        Email: ira@kkwtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2015, I filed the foregoing document and all attached exhibits with the Clerk of Court, using the CM/ECF system, which will send a notification of such filing to the following:

>Margaret M. Kolbe
>Assistant U.S. Attorney
>United States Attorney's Office
>271 Cadman Plaza East, 7th Floor
>Brooklyn, New York 11201
>Margaret.Kolbe2@usdoj.gov

And I hereby certify that I mailed the foregoing document by U.S. Mail to the following non-filing user:

>None

>/s/Ira J. Kurzban
>Ira J. Kurzban